[Civ. No. 670.   First Appellate District.—February 23, 1910.]

## ADELINE M. LOEHR, Respondent, v. BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

POWER OF BOARD OF EDUCATION—REASSIGNMENT OF PRIMARY SCHOOL TEACHER—CHANGE OF PARTICULAR GRADE—DISCRETION.—The San Francisco board of education has discretion to assign and transfer teachers of primary schools from one primary school to another, and from one class of "A-First" grade in one primary school at a fixed salary, to another class of "B-Third" grade in another primary school, at a less salary. Such classification of primary schools into grades is made for the purpose of dividing the course of study or curriculum into different periods; but the statute does not recognize their existence.

ID.—STATUTORY GRADES.—The law itself recognizes but three principal grades, namely, primary, grammar and high school grades. Certificates authorizing teachers to instruct in these grades are issued accordingly as primary, grammar and as high school certificates, and qualify the teacher for service only in the grade or grades covered by the certificate.

ID.—STATUTORY SENSE OF "GRADE"—LIMITATION OF POWERS OF BOARD. It is only in the statutory sense of the term "grade" that we must regard it as limiting the power of the board of education to transfer and assign teachers. The asserted right of a teacher to teach a particular class within a particular statutory grade, in preference to another class in the same grade, cannot be upheld without express statutory authority.

ID.—UNLIMITED POWER OF BOARD.—In the absence of constitutional or statutory limitation, boards of education may exercise an unlimited discretion in the employment and dismissal of teachers, as well as in their transfer and assignment.

ID.—CONSTRUCTION OF POLITICAL CODE.—There is nothing in section 1793 of the Political Code placing any limitation upon the power of the board of education to transfer a teacher from class to class or from school to school within the same statutory grade. All that the statute requires is that the teacher shall be retained in some class in a school of the grade expressed in the teacher's certificate.

ID.—INTENT OF LEGISLATORS—FREEDOM OF ACTION BY BOARD.—The legislators certainly intended to leave such freedom of action in the board of education to make such assignment or transfer of a teacher from one class to another within the same statutory grade to which a slightly lower salary is attached, as is complained of in this case.

ID.—LEAVE OF ABSENCE OF TEACHER—UNAUTHORIZED PLACING UPON UNASSIGNED LIST—RIGHT TO SALARY.—Where a teacher was granted a leave of absence by the board of education, they had no right to place her upon the unassigned list, and she is entitled to *mandamus* to compel the payment of her former salary to such time as she was finally reassigned to another primary school.

ID.—REFUSAL TO ACCEPT REASSIGNMENT—MANDAMUS NOT PERMISSIBLE. Where the teacher refused to accept the reassignment lawfully made by the board of education, she is not entitled to *mandamus* to compel the allowance of the salary incident thereto.

ID.—RIGHT OF INDEFINITE EMPLOYMENT LIMITED TO CITY CERTIFICATE. Section 1793 of the Political Code confers the right of indefinite employment upon those who are the holders of city or city and county certificates, and by it this right is conferred only as an incident to the holding of a city certificate as distinguished from a county, state, or special certificate. It is not determined whether the holder of a high school certificate is not the holder of a city certificate within the contemplation of that section.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Judge Hunt, Judge.

The facts are stated in the opinion of the court.

Percy V. Long, and John T. Nourse, for Appellants.

C. M. Fickert, and I. F. Chapman, for Respondent.

KERRIGAN, J.—This is an appeal by the defendants from a judgment of the superior court in favor of the plaintiff in a *mandamus* proceeding.

The trial court awarded plaintiff a peremptory writ, by which the board of education of the city and county of San Francisco was commanded to admit plaintiff to the position of teacher of a class designated as "A-First Grade" in a common public school of said city and county, and to approve, allow and order to be paid her demand for $83 per month as compensation for services as teacher of such grade.

The case was submitted to the court upon an agreed statement of facts, from which it appears that plaintiff was the holder of a high school certificate, granted by an order of said board of education, which rendered her eligible to teach

in any of the public schools of said city and county. In June, 1903, plaintiff was elected to the position of teacher in the primary grade and placed upon the substitute list without any regular assignment. Thereafter she was assigned and transferred at various times to different schools and classes, all of the primary department, until June, 1906, when, her probation period having expired, she was, by a resolution of the board of education, elected a regular teacher in the department and placed upon the unassigned list until such time as her services would be required. In August, 1906, she was assigned as a teacher of a class of first grade and second grade pupils in the Sheridan Annex School at a salary of $83 per month. She remained there until June, 1907, when, at her request, she was granted a leave of absence until August 19, 1907. At the termination of this leave she learned that she had been placed on the unassigned list of teachers. The reason of this action by the board of education is not indicated in the agreed statement of facts; and unless for such moving cause as was held sufficient to sustain similar action in *Bates v. Board of Education,* 139 Cal. 145, [72 Pac. 907], (where, in the interest of economy, the plaintiff's class had been consolidated with others), it would be held to constitute a violation of her rights as defined in *Kennedy* v. *Board of Education,* 82 Cal. 483, [22 Pac. 1402], and *Fairchild* v. *Board of Education,* 107 Cal. 92, [40 Pac. 26]. The significance of this action of the board, however, is lost in what subsequently occurred, for it further appears from the agreed statement of facts that whatever may have been the cause of the placing of the plaintiff upon the unassigned list, the board did again, in November, 1907, assign her to the Marshall Primary school, to take charge of the B-third grade, which position carried a salary of $76 a month. She refused to accept this assignment, and subsequently made a number of demands to be assigned to an A-first grade class in the Sheridan Annex school, or to a class of similar rating in any other school paying a like salary, but such demands were not complied with. She has refused to accept assignment to a class having a different rating, or to a different grade, or to any class or grade carrying a different salary.

The questions presented by these facts call for a definition of the powers of the board of education in the transfer and

12 Cal. App.—43

assignment of teachers. That the board ought to have wide discretion in such matters would seem to be dictated by the necessity of maintaining the efficiency of the department. No doubt it often occurs that a teacher assigned to a particular class forming a part of a particular grade is shown by experience to be better suited to the instruction of a different class forming part of a different grade. In such event it is reasonable to suppose that the legislature intended that the board of education should be vested with discretion to make a reassignment of the teacher to such class; and unless there is something in the statute plainly requiring a different construction, we should be reluctant to decide that boards of education do not possess this power.

These considerations caused the court in *Kennedy* v. *Board of Education,* at page 492 of 82 Cal. [22 Pac. 1045], to express the reservation: "We do not wish to be understood as holding that the board of education has not the power to transfer a teacher from one school to another of the same grade. The statute does not guarantee to a teacher the right to teach in any particular *school,* but to continue as such teacher in a certain *grade,* and the transfer of teachers from one school to another may be necessary for the good of schools, and should not be prohibited."

The term "grade" as used in that decision, we assume, was employed in the statutory sense. In the agreed statement of facts reference is made to the "A-First primary grade," and the "B-Third grade," from which we infer that the public schools of the city and county of San Francisco have been so classified as to permit the application of such generic designations to all classes having the same course of instruction. Indeed, it is a matter of common knowledge that such a classification is made by the school authorities of the various counties and cities of the state. Pupils are said to belong to the first, second, third or other grades, as the case may be, and to this fact some confusion of thought may be attributed. Such classification into grades is made by boards of education for the purpose of dividing the course of study or curriculum into convenient periods. There is nothing in the statute, however, which recognizes their existence. The law itself recognizes but three principal grades; namely, primary, grammar and high school grades. Certificates authorizing

teachers to instruct in these grades are issued accordingly as primary, grammar or high school certificates; and, as such, qualify the teacher for service only in the grade or grades covered by the certificate. It is in this statutory sense that we must regard the term "grade" when seeking a limitation upon the powers of the defendant to transfer and assign teachers, as it will not be pretended that the asserted right of the teacher to teach a particular class within a particular grade, in preference to another class within the same grade, can be upheld without express statutory authority. On the contrary, it has been uniformly held in this state that, in the absence of a constitutional or statutory limitation, boards of education may exercise an unlimited discretion in the employment and dismissal of teachers, as well as in their transfer and assignment. (*Kennedy* v. *Board of Education,* 82 Cal. 483, [22 Pac. 1042]; *Barthel* v. *Board of Education,* 153 Cal. 376, [95 Pac. 892]; *Stockton* v. *Board of Education,* 145 Cal. 246, [78 Pac. 730]; *Bradley* v. *Board of Education,* 1 Cal. App. 212, [81 Pac. 1036]; *Harly* v. *Board of Education,* 2 Cal. App. 418, [83 Pac. 1081].) Therefore, unless there is some provision of the law, denying the board of education the right, in its discretion, to transfer and assign teachers, it must be held in this case that the assignment of the plaintiff to the Marshall Primary school, to take charge of the "B-Third grade," was a valid transfer and assignment.

Plaintiff contends that there is such a limitation contained in section 1793 of the Political Code. That section has been held to confer upon teachers elected without definite tenure the right to hold the position while competent and faithful. and to be subject to dismissal only for insubordination or other causes specified in section 1791 of the same code. To this statement of the rights of the teachers must be added the qualification expressed in the case of *Bates* v. *Board of Education,* 139 Cal. 145, [72 Pac. 907], that power resides in boards of education to consolidate classes and to discontinue a school or class in the interest of economy or for other good cause, and in such event to determine what teacher shall be retired. Section 1793 in part provides: "The holders of city, or city and county, certificates, are eligible to teach in the cities, or cities and counties, in which such certificates were granted, in schools or classes of grades corresponding to the grades of

such certificates, and when elected shall be dismissed only for insubordination or other causes, as mentioned in section seventeen hundred and ninety-one of this code, duly ascertained and approved by the boards of education of such cities, or cities and counties.'' It will be observed that the section makes teachers eligible to teach only in ''schools or classes of *grades* corresponding to the *grades*'' of their certificates. There is nothing in this section, however, placing any limitation upon the power of the board of education to transfer a teacher from class to class, or from school to school. All that the statute seems to require is that the teacher shall be retained in some class in a school of the grade which the certificate qualifies him to teach in. However, it is sufficient for the purposes of this case to say that while plaintiff was transferred from one class to another, to which a slightly lower salary was attached, nevertheless she was not removed from the statutory grade to which she was elected, and as we find nothing in the law preventing the board of education from making such transfer, it follows that the board acted within its powers, and that its action is valid. The legislature certainly intended to leave such freedom of action in a board of education as would permit it in its discretion to make such assignment or transfer of a teacher as is complained of in this case.

In *Kennedy* v. *Board of Education*, 82 Cal. 483, [22 Pac. 1042], the teacher was transferred from one school to another of lower grade, and the court observes: ''She was removed from the *grade* in which her certificate and the statute entitled her to teach.''

As we have seen, the placing of the plaintiff without cause upon the unassigned list while away on a leave of absence was unauthorized by law. Upon her return she was entitled to immediate assignment, and the fact that she had been wrongfully placed on the unassigned list did not operate to deprive her of her right to draw the salary incident to the position from which she had been wrongfully removed. This right existed from the date of her return, August 19, 1907, until November 26, 1907, when she was, as we have held, lawfully assigned to a class in the primary grade. We hold therefore that she is lawfully entitled to a salary of $83 a month from August 19, 1907, to November 26, 1907, and the

court below should have issued a writ of mandate, directing the defendants to approve, allow and order to be paid such salary. But her refusal to accept the assignment and enter upon the discharge of the duties of a teacher in the "B-Third grade" in the Marshall Primary school at a salary of $76 a month, was a refusal on her part to perform the services which she was legally required to perform, and she cannot legally refuse to perform such services and insist upon the payment of the salary incident thereto.

"The public schools," as was pertinently observed in *Bates* v. *Board of Education*, 139 Cal. 145, [72 Pac. 907], "were not created, nor are they supported, for the benefit of teachers therein, . . . but for the benefit of the pupils and the resulting benefit to their parents and the community at large."

Section 1793 confers the right of indefinite employment upon those who are "the holders of city or city and county certificates." And it has been repeatedly held, in accordance with the plain language of the section, that this right is conferred only as an incident to the holding of a city certificate as distinguished from a county, state or special certificate. (*Stockton* v. *Board of Education*, 145 Cal. 246, [78 Pac. 730] ; *Barthel* v. *Board of Education*, 153 Cal. 376, [95 Pac. 892] ; *Bradley* v. *Board of Education*, 1 Cal. App. 212, [81 Pac. 1036].) Defendants contend in this case that the holder of a high school certificate is not the holder of a city certificate within the contemplation of the section quoted, but the views we have expressed render the determination of this point unnecessary at this time.

The judgment is reversed, with directions to the trial court to enter judgment in accordance with the views herein expressed.

Cooper, P. J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 22, 1910.